J-A20017-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
  :           PENNSYLVANIA
  :
       v.            :
  :
  :
KASIA D. JORDAN          :
  :
      Appellant     :   No. 1629 WDA 2018

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012628-2017


BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:          FILED OCTOBER 16, 2020

Appellant, Kasia D. Jordan, appeals from the judgment of sentence entered on October 18, 2018, following her bench trial convictions for driving under the influence (DUI) – highest rate of alcohol, DUI – general impairment, and restriction on alcoholic beverages.[1]  Upon review, we affirm the convictions, but vacate Appellant's judgment of sentence and remand for resentencing.

The trial court summarized the facts of this case as follows:

[Braddock Hills Police Officer, Sean Schreckengost] was on duty on April 23, 2017 and responded to a call about a vehicle, with loud music playing [in the parking lot] at 3200 Brinton Manor at 2:45 a[.]m.  He approached the driver's seat and [Appellant] followed the officer's directive to turn off the vehicle.  The officer smelled an odor of alcoholic beverage and observed a half empty bottle of vodka inside her purse.  The officer testified that [Appellant] had slow motor function skills, and that she struggled

_____

[1]  75 Pa.C.S.A. §§ 3802(c), 3802(a)(1), and 3809(a), respectively.

to locate her license. [Appellant] resided at 3202 Brinton Manor Drive, and [Appellant's] driver's record was admitted into evidence. A cup, which [Appellant] was holding when the officer approached, was half filled with vodka, by [Appellant's] admission. [Appellant] claimed to be [all right] and agreed to submit to field sobriety test[s]. After the tests, the officer concluded [Appellant] was under the influence [of alcohol] and not safe to drive or operate [a vehicle]. [Appellant] was arrested, and agreed to submit to a breath test, which yielded a reading of .183 [Blood Alcohol Content (B.A.C.)] at 3:39 a[.]m. [Appellant] was then transported back to the [Brinton Manor] apartments and released to the custody of [her] boyfriend.

[At trial, t]he defense called Tony [P]ow, [Appellant's] boyfriend [with whom she was living] at the time, who testified that he was with [Appellant] that night. He was unable to recall the time that [Appellant] left the[ir] apartment after having a verbal altercation. He [did not] hear any music and remembered seeing [Appellant's] car parked outside his window, as he looked at it "pretty often" that night. [He claimed that Appellant did not drive the vehicle.] [Pow] never left [the apartment] to inquire when the police arrived.

Trial Court Opinion, 11/20/2019, at 3-4 (record citations and most quotations omitted).

On October 18, 2018, the trial court held a bench trial wherein Officer Schreckengost and Tony Pow testified. Relevant to this appeal, when first approaching Appellant, Officer Schreckengost testified as follows:

Basically[,] said she was already all right, initially, and that she now made it home and that – and I did not see her drive at that point in time, so she made it home, safely pretty much; however, I didn't see her driving.

N.T., 10/18/2018, at 15. He also stated he believed Appellant was in physical control of the vehicle in question because Appellant was awake, "she was in the driver's side of the vehicle, it was running, [and the head]lights were on."

- 2 -

Id. at 18-19. Moreover, as set forth above, there was uncontradicted evidence that Appellant was intoxicated. In announcing judgment, the trial court stated:

> It is a very close case. I think what is dispositive is the statement [Appellant] had already made it home which indicates to me that [she] had driven there.

Id. at 44. Despite not testifying, Appellant immediately responded to the trial court's announcement and denied making those comments to police. Id. at 45. Ultimately, however, the trial court credited the officer's testimony and found Appellant guilty of the aforementioned charges.

Appellant waived a presentence investigation and proceeded immediately to sentencing. At sentencing, both Appellant and the Commonwealth acknowledged that Appellant had two prior DUI offenses. Id. at 44-45. Pursuant to 75 Pa.C.S.A. § 3804(c)(3), the trial court sentenced Appellant as a third time DUI offender to a mandatory term of 15 months of intermediate punishment to run concurrently with 30 months of probation, plus a mandatory fine of $2,500.00, for DUI – highest rate of alcohol. The trial court imposed no further penalty on the remaining convictions. This timely appeal resulted.[2]

_____

[2] Appellant filed a timely notice of appeal on November 16, 2018. On December 4, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After requesting and receiving an extension of time, Appellant complied timely on January 17, 2019. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(b) on November 20, 2019.

Thereafter, while the appeal was pending, the trial court recounts:

On May 22, 2019, [Appellant] filed an application for stay of sentence pending appeal. [The trial court learned Appellant] had never reported to the Allegheny County Probation Office to begin serving her sentence. At a hearing on June 4, 2019, it was established that Probation Officer Michael Bovie contacted [Appellant] on three separate occasions to [request that she] report to begin serving her sentence. [Appellant] ignored these requests[. On June 4, 2019, she appeared at 3:00 p.m. for a hearing scheduled at 9:00 a.m. on her application for stay.] Appellant was breath tested, with an intoxilizer[,] and tested positive for alcohol at .139 B.A.C. She was remanded to the Allegheny County Jail and the hearing was continued to June 6, 2019.

*  *  *

The Commonwealth noted [Appellant's] three convictions for DUI in the past ten years: an [Accelerated Rehabilitative Disposition (ARD)] in December, 2008[,] a guilty plea in January, 2013[,] and the instant case with an arrest date of February 18, 2018. All three occurred in Allegheny County, Pennsylvania.

Trial Court Opinion, 11/20/2019, at 3 (record citations and superfluous capitalization omitted). The trial court subsequently denied Appellant's application for stay of sentence pending appeal.

On appeal, Appellant presents the following issue for our review:

I.    Was the evidence insufficient to convict [Appellant] of [DUI – highest rate of alcohol and DUI – general impairment] because the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] drove, operated, or was in actual physical control of a motor vehicle?

Appellant's Brief, at 5 (complete capitalization omitted).

Appellant claims that there was insufficient evidence to convict her of either DUI variant because "[t]he Commonwealth failed to prove, beyond a

- 4 -

reasonable doubt, that [she] drove, operated or was in actual physical control of the vehicle that was parked in a parking space directly outside of her apartment building." Id. at 12. Instead, she maintains that "[t]he Commonwealth merely proved that [Appellant] was listening to music and drinking [alcohol] in the car that was parked by her home." Id. She claims that no witnesses saw her driving. Id. at 14 and 20. Moreover, Appellant claims that the location of the vehicle is a key factor in determining actual physical control of a vehicle. Id. at 13.

Relying primarily on Commonwealth v. Byers, 650 A.2d 468 (Pa. Super. 1994), Appellant argues that this Court has "found insufficient evidence of actual physical control when [DUI defendants] were found within walking distance of a place where they could obtain alcohol[.]" Id. at 15-16. Further, Appellant posits that the fact the engine was running supports her argument that she "was merely using the vehicle like the living room in her house, a stationary place to listen to music and drink alcohol" because she needed to turn on the radio and "may have had the heater on." Id. at 14-15. Appellant argues the evidence shows that she "was drinking and listening to music in her car in the parking lot for at least 30 minutes" and "[t]he fact that she was holding a half-empty cup and there was a half empty bottle of vodka near her suggests" she was there "longer than that." Id. at 20. Appellant denies telling police that "she now made it home," but claims the foregoing evidence and Tony Pow's corroborating testimony supports her position regardless of the

inference drawn by the trial court from the officer's testimony. Id. at 20-21.

In conclusion, Appellant argues:

> Although [Appellant] hypothetically could have driven at some point, no evidence showed when she may have dr[iven], where she may have come from, and whether she was intoxicated such that her B.A.C. was .16 percent or higher or such that she was incapable of safe driving if she did indeed drive.

Id. at 21.

> This Court has stated:

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is de novo and our scope of review is plenary. In assessing [a] sufficiency challenge, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that the Commonwealth proved each element of the crime beyond a reasonable doubt. The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

Commonwealth v. Giron, 155 A.3d 635, 638 (Pa. Super. 2017) (internal citations, quotations, and original brackets omitted).

> Section 3802 provides, in pertinent part:

> (a) General impairment.--

> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

> * * *

> (c) Highest rate of alcohol.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16%

- 6 -

or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1) and (c).

We previously determined:

The term "operate" requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion. Our precedent indicates that a combination of the following factors is required in determining whether a person had "actual physical control" of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. A determination of actual physical control of a vehicle is based upon the totality of the circumstances. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle.

Commonwealth v. Williams, 871 A.2d 254, 259 (Pa. Super. 2005) (internal citations omitted). Furthermore, a "police [] testimony is sufficient to prove the elements of DUI-general impairment." Giron, 155 A.3d at 638 (citation omitted).

Here, the trial court "found the officer[']s testimony credible, and the elements of [DUI] were established[.]" Trial Court Opinion, 11/20/2019, at 5. Viewing the evidence presented at trial in the light most favorable to the Commonwealth, as our standard requires, we agree. Initially, we note that the uncontradicted evidence presented at trial established that Appellant

admitted to police that she had driven recently while intoxicated.[3]   Her statement "she made it home safely" indicates she recognized she was intoxicated, but had driven herself from another location and was content to be parked at home without injury.  For this reason alone, the Commonwealth proved Appellant was driving.

Moreover, the trial court determined that Appellant "was in actual physical control of the car and could have been a danger to herself or others if she would have been driving."  Id. at 4.  Here, the totality of the circumstances showed Appellant was in control of the vehicle because the engine was running, the headlights were on, Appellant was awake and seated in the driver's seat, and a police officer testified that Appellant admitted to driving her vehicle.  Furthermore, we reject Appellant's reliance on Byers and her suggestion that the location of her car, in her apartment parking lot, proved she had not driven.  In Byers, police found Byers asleep in the driver's seat with the engine running and the headlights on, in a tavern parking lot after closing hours.  The Byers Court determined "Byers had not moved his car from the parking lot of the bar where he had been drinking" and "no witness [] testified that Byers had moved the vehicle prior to being arrested."

_____

[3] Appellant denied making the statement after the close of evidence.  She was not sworn as a witness or subject to cross-examination, so neither the trial court nor this Court may consider it.  See Tecce v. Hally, 106 A.3d 728, 731 (Pa. Super. 2014) (citation omitted) ("Because there was no oath, no competent testimony was presented to the court upon which any credibility determination could be made. Credibility and reliability of witnesses are determined "in a particular manner: by testing in the crucible of cross-examination.").

Byers, 650 A.2d at 470. The location of the vehicle and the time of arrest in Byers indisputably showed that Byers had been inside the tavern, became intoxicated, started his vehicle, and then fell asleep before driving. In that case, it was clear Byers did not become intoxicated before driving to the tavern parking lot. There was no doubt about the chronology of events - where and when Byers became intoxicated and that he had not moved his vehicle after consuming alcohol.

This case is distinguishable. Here, Appellant was awake and drinking alcohol in her car when the police arrived. She was parked in a lot outside her residence with the engine running, music playing loudly, and headlights engaged. In Byers, the totality of the circumstances, including the location of Byers' car, established a chronology of events in which Byers consumed alcohol and became intoxicated inside a tavern, exited the establishment and started his vehicle, and then fell asleep before driving. There was only one place where Byers consumed alcohol and there was no evidence that Byers operated his vehicle after becoming intoxicated. In this case, by contrast, the trial court credited the officer's testimony, including his testimony that Appellant admitted that "she made it home safely"[4] and that Appellant's boyfriend, Tony Pow, appeared to have slept through the incident and could not verify whether Appellant did or did not drive. Hence, unlike Byers, this

_____

[4] Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the testimony that Appellant admitted that "she made it home safely" lends credence to the inference that Appellant operated her vehicle after consuming alcohol.

case involves additional evidence that Appellant moved her car after consuming alcohol and the fact that Appellant's vehicle was located at her residence, where she had unfettered access to come and go, did not definitively show that she acquired alcohol from only a short distance away and merely consumed it in her car, as she argues in her brief.

Viewing the totality of the evidence in the light most favorable to the Commonwealth, we conclude that the evidence showed that Appellant drove, operated, and had physical control of her vehicle prior to the arrival of the police. Appellant's statement that she made it home coupled with the running of the engine, headlights, and sound system showed that Appellant drove while intoxicated, parked in her residential parking lot, and continued drinking alcohol while listening to music in her vehicle until she was arrested. As such, there is no merit to Appellant's claim that the Commonwealth failed to present sufficient evidence and, accordingly, we affirm Appellant's convictions.

In her reply brief to this Court, Appellant argues that her mandatory sentence imposed pursuant to 75 Pa.C.S.A. § 3804(c)(3) is illegal because this Court recently declared Section 3804 unconstitutional in Commonwealth v. Chichkin, 2020 WL 2552803 (Pa. Super. 2020). For the reasons that follow, we agree.

This Court has stated:

It is well settled that a challenge to the legality of a sentence raises a question of law. In reviewing this type of claim, our standard of review is de novo and our scope of review is plenary. An illegal sentence must be vacated. Further, we have explained that a criminal defendant cannot agree to an illegal sentence[.]

> Moreover, a challenge to the legality of the sentence can never be waived and may be raised by this Court sua sponte.

Commonwealth v. Muhammed, 219 A.3d 1207, 1211 (Pa. Super. 2019) (internal citations and quotations omitted).

As discussed above, the trial court sentenced Appellant to a mandatory sentence pursuant to 75 Pa.C.S.A. § 3804(c)(3) for a third DUI offense. The term "prior offense" is defined in 75 Pa.C.S.A. § 3806(a) and includes "acceptance of Accelerated Rehabilitative Disposition." 75 Pa.C.S.A. § 3806(a). Recently, however, in Chichkin, "we conclude[d] the particular provision of 75 Pa.C.S.A. § 3806(a), which defines a prior acceptance of ARD in a DUI case as a 'prior offense' for DUI sentencing enhancement purposes, offend[ed] the Due Process Clause and [was] therefore unconstitutional." Chichkin, 2020 WL 2552803, at *10. We determined that a constitutional violation occurs when "the trial court increase[s a] sentence[] based solely upon the[] prior acceptance[] of ARD, absent proof beyond a reasonable doubt" that the prior offense was committed. Id. We reasoned:

> ARD is a pretrial disposition of charges. Upon successful completion of the program, a defendant is entitled to move for dismissal of the charges and expungement of the corresponding arrest record. The fact that a defendant accepted ARD does not carry with it the procedural safeguards of a traditional conviction following a judge or jury trial. Indeed, the participating defendant need not admit his or her guilt, and the Commonwealth is not required to prove the defendant's culpability beyond a reasonable doubt.

Id. at *7. "Accordingly, if the Commonwealth seeks to enhance a defendant's DUI sentence based upon that defendant's prior acceptance of ARD, it must

- 11 -

prove, beyond a reasonable doubt, that the defendant actually committed the prior DUI offense." Id. at *10.

Here, there is no dispute that Appellant was sentenced pursuant to 3804(c)(3) for a third DUI offense even though her record indicates she received ARD in December 2008 and pled guilty to a DUI offense in 2013. Under Chichkin, the mere acceptance of ARD does not qualify as a prior offense for sentencing purposes under 75 Pa.C.S.A. § 3806 in the absence of independent confirmation (beyond a reasonable doubt) of the prior underlying DUI offense. As such, it was error for the trial court to increase Appellant's sentence based solely upon the prior acceptance of ARD.

For all of the foregoing reasons, we affirm Appellant's convictions, vacate her judgment of sentence, and remand for resentencing in light of Chichkin.

Judgment of sentence vacated. Case remanded for resentencing.[5] Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2020

_____

[5] We direct our Prothonotary to remand the entire record to the trial court.

- 12 -